MATTIE J. GILLIKEN, EXECUTRIX, v. GEORGE D. NORCOM AND WIFE, BESSIE NORCOM ET AL.

(Filed 3 April, 1929.)

**Deeds and Conveyances A g—Evidence of mental incapacity to make deed held for jury—Undue Influence—Fraud.**

In an action by the grantor's daughter-in-law and devisee to set aside a deed to the unrelated tenant of the grantor, evidence that tends to show that the grantor was a woman seventy-one years of age, feeble in body, easily influenced, and with the mind of a child, and that the consideration recited in the deed was ten dollars and other consideration, and the grantor refuses to testify as to the amount of the consideration paid : *Held,* sufficient to take the case to the jury under proper instructions from the court.

CIVIL ACTION, before *Nunn, J.,* at October Term, 1928, of CRAVEN.

The plaintiff, Mattie J. Gilliken, is the daughter-in-law of the deceased, Mary E. Davis. Mary E. Davis had one son who married the plaintiff in 1905, and who lived with his mother until his death in 1919. The plaintiff lived with her mother-in-law, Mary E. Davis, until March, 1923, when she married William L. Gilliken and then moved away. Mary E. Davis died on 12 June, 1924, leaving a last will and testament devising to the plaintiff a tract of land containing about 50 acres. On

23 July, 1923, or about eleven months before her death, Mary E. Davis executed a deed for said land to the defendant, George D. Norcom, which deed recited a consideration of ten dollars and other valuable consideration. Norcom was a tenant of the grantor and was not related to her by blood or otherwise.

The plaintiff brought a suit to set aside said deed, alleging that at the time said deed was made that the grantor, Mary E. Davis, was without sufficient mental capacity to execute a deed, and furthermore, that the defendant exerted undue influence in procuring said deed. At the conclusion of the testimony for plaintiff a judgment of nonsuit was entered, from which the plaintiff appealed.

*Abernethy & Abernethy and Ward & Ward for plaintiff.*
*C. R. Wheatley and J. F. Duncan for defendant.*

BROGDEN, J. The sole question presented is whether there was sufficient evidence of mental incapacity to be submitted to the jury.

The law recognizes the same standard of mental capacity for testing the validity of both deeds and wills, although it is suggested that perhaps a court would scrutinize a deed more closely than a will. *Bond v. Mfg. Co.,* 140 N. C., 382, 52 S. E., 929. The degree of mental capacity requisite for the valid execution of a deed is thus stated in *Lamb v. Perry,* 169 N. C., 436, 86 S. E., 179: "A want of adequate mental capacity of itself vitiates the deed, while mere mental weakness or infirmity will not do so, if sufficient intelligence remains to understand the nature, scope and effect of the act being performed. But while this is true, weakness of mind, whether natural or induced by the excessive use of drugs or any other cause, when accompanied by such circumstances as tend to show what advantage was taken of it by the party who procured the deed, or when it appears that there is not only weakness of mind, but inadequacy of consideration, especially when it is gross, and the situation of the parties is so unequal, by reason of the weakness of the one and the mental superiority of the other, or for other reason, the jury may infer fraud, or undue influence, which in law is the same thing."

The evidence tended to show that the deceased at the time of executing the deed was about seventy-one years of age and was suffering with paralysis. "Her physical condition was very bad, and her mental condition just about like a child—just as childish as could be. She was deaf and could not hear. From about the first of 1923, until her death, her sense was about like that of a little child; seemed she couldn't remember. Most anybody could influence her. She had hardly any mind in June, 1924. Prior to her death she was perfectly helpless and had no mind."

A physician, who treated Mary E. Davis, the grantor, in the fall of 1923, testified that "she was childish and her mentality was below that of a twelve-year-old child. . . . You could not reason with her; she was more like an irrational child than an intelligent woman."

Another physician, who treated the grantor at the time she was crippled in October or November, 1922, testified "that at that time her mind was not any better than that of a twelve-year-old child."

Another witness testified that prior to March, 1923, "the mental condition . . . of Mrs. Davis was not more than a child's; could be persuaded almost any way by almost anybody; didn't have sense enough to know when she was right or wrong till it was too late."

There was testimony that the property was worth $5,000. The deed recited a consideration of $10. The defendant testified in his own behalf and was asked by the court what he paid for the land. He replied: "I gave her a consideration."

It is our opinion that the evidence should have been submitted to the jury with proper instructions from the court.

Reversed.