EFFIE LEE, PEARL HOLTZCLAW, FLORA HOLLIDAY AND ZORA ALLISON, v. WALTER W. LEDBETTER AND WIFE, MARIE L. LEDBETTER.

(Filed 13 October, 1948.)

**1. Deeds § 2a (3)—**

Undue influence is the exercise of an improper influence over the mind and will of another to such an extent that his professed action is not that of a free agent, but in reality is the act of the person who procures the result.

**2. Same—Evidence of undue influence held insufficient to be submitted to jury.**

The record disclosed that defendants, a nephew and his wife, visited his aged uncle weekly for a long period of time before his death and that at the time of the execution of the deed to defendants, in which he reserved a life estate, and for which the nephew paid $75.00 upon advice that consideration was necessary to make the deed valid, it was understood by the uncle and defendants that they would build a small house near the one then occupied by the uncle and that defendants would move in the main house and look after the uncle who would live in the small house. Defendants deeded a part of the land to a neighbor in compliance with the uncle's request, and at the time of the uncle's death building materials had been placed on the premises preparatory to the erection of the contemplated home for the uncle. The only evidence of undue influence introduced by plaintiffs, nieces of the grantor, was to the effect that on the last of their infrequent visits to their uncle he was cool toward them, and that subsequent to the uncle's funeral the nephew stated to one of them that he had been trying to get the land for a year and had bought the place for $75.00, and that he suggested that plaintiffs take the personalty and he would take the land. *Held:* The evidence was insufficient to justify the submission of an issue of undue influence.

**3. Deeds §§ 4, 16—**

A deed based upon agreement of the grantees to maintain and care for grantor in his declining years is based upon sufficient consideration and is not voluntary.

APPEAL by defendants from *Clements, J.,* at April Term, 1948, of HENDERSON.

Action to set aside a deed executed on 9 February, 1946, by Robert Ledbetter to the defendants, in which instrument the grantor reserved a life estate.

Robert Ledbetter died on 18 March, 1946, at the age of 83, leaving as his nearest of kin the plaintiffs who were his nieces, the children of a deceased sister, and the defendant Walter W. Ledbetter and his sister, Mrs. B. Cogdill, the children of a deceased brother.

The deed was attacked on the ground that the grantor did not have the mental capacity to execute it and that it was procured by undue influence.

Issues were submitted to the jury and answered as follows:

"1. Was Robert Ledbetter mentally incompetent on 11 February, 1946, to execute the paper writing purporting to be a deed from him to the defendants Walter Ledbetter and his wife Marie L. Ledbetter, as alleged in the complaint? Answer: No.

"2. Was the execution of said paper writing procured by undue influence? Answer: Yes."

The second issue was submitted over the objection of the defendants.

From the judgment entered on the verdict, the defendants appeal and assign error.

*Paul K. Barnwell and J. E. Shipman for plaintiffs.*
*R. L. Whitmire and Lewis P. Hamlin for defendants.*

DENNY, J. The sole question presented for our consideration is whether or not there was sufficient evidence of undue influence offered in the trial below, to sustain the verdict on the second issue.

The record is replete with evidence to the effect that Robert Ledbetter stated from time to time to his neighbors and close friends, over a period of years, that he wanted his nephew, Walter W. Ledbetter, to have his land. He gave as his reason for wanting him to have the property, he had been good to him. It further appears the defendants visited him on an average of once a week for a long time before his death and did many things for him. The nieces visited him only two or three times a year, some of them not that often.

In addition to the evidence of old age, the mental and physical weakness of the grantor, the only evidence offered by the plaintiffs in support of their allegations of undue influence, was the testimony of some of the plaintiffs to the effect that when they went to his home in September, 1945, for the purpose of cleaning his house, he manifested a coolness toward them which he had not shown when they had gone there on a similar mission two years before; and that on Sunday following the

funeral of Robert Ledbetter, one of the plaintiffs asked Walter W. Led-
better, "What are we going to do with the land, divide it or sell it?"
Walter Ledbetter said, "I have been trying to get the land for the last
year . . . and then said he bought the place." When asked how much
he paid for it, he said "Seventy-five Dollars." Some of the plaintiffs
also testified that he later proposed to them that they take the personal
property belonging to the estate, which consists of several thousand
dollars in money and bonds, and he would take the land, and it would not
be necessary to pay inheritance taxes. Ledbetter denied making any of
the above statements, but gave as his reason for the payment of the
$75.00 to Robert Ledbetter, he was advised by his employer that some
consideration was necessary to make the deed valid.

It also appears from the evidence that at the time the deed was exe-
cuted it was understood between the grantor and these defendants that
the defendants would build him a small house near the one occupied by
him, and when this house was completed, the defendants would move in
the one he then occupied and would look after him. The defendants
were requested by Robert Ledbetter to convey a small part of the lands
conveyed to them to Jess Townsend, a neighbor who had been friendly
and helpful to him. The deed from the defendants to Townsend was
executed and delivered, and at the time of the death of Robert Ledbetter,
certain materials had been placed on the premises by the defendants,
preparatory to the erection of the contemplated home for Robert Led-
better.

Undue influence is a fraudulent, overreaching or dominant influence
over the mind of another which induces him to execute a deed or other
instrument materially affecting his rights, which he would not have
executed otherwise. Or, to put it another way, it means the exercise of
an improper influence over the mind and will of another to such an
extent that his professed act is not that of a free agent, but in reality is
the act of the third person who procured the result. *Myatt v. Myatt,*
149 N. C., 137, 62 S. E., 887; *In re Will of Turnage,* 208 N. C., 130,
179 S. E., 332; *In re Will of Harris,* 218 N. C., 459, 11 S. E. (2d), 310.

A careful consideration of the evidence on this record, bearing on the
question of undue influence, when considered in the light most favorable
to the plaintiffs, leads us to the conclusion that it is insufficient to sustain
the verdict on the second issue. *In re Will of Ball,* 225 N. C., 91,
33 S. E. (2d), 619; *Gerringer v. Gerringer,* 223 N. C., 818, 28 S. E.
(2d), 501; *Owens v. Rothrock,* 198 N. C., 594, 152 S. E., 681; *Myatt v.
Myatt, supra.*

There is ample evidence to sustain the view that the grantor executed
the deed involved herein, for the purpose of securing to himself adequate
care and maintenance in his declining years. A deed based upon such an

agreement is not voluntary and without consideration. *Ayers v. Banks,* 201 N. C., 811, 161 S. E., 550; *Higgins v. Higgins,* 223 N. C., 453, 27 S. E. (2d), 128; *Gerringer v. Gerringer, supra.*

The defendants' exception to the submission of the second issue to the jury is sustained, and the judgment of the court below is

Reversed.